May it please the court. My name is Rebecca Randles. I'm with the law firm of Randles-Mata and we represent the plaintiff, Sarah Dobbins, in this matter. The theme for this case is that Sarah Dobbins deserved better. The defendants proclaim Sarah Dobbins didn't come to work 45 days. She was given AWOL 45 days. She was supposed to come to work. Her supervisor did nothing wrong in telling her continuously, little girl, leave your problems at home. Sarah Dobbins was a good employee. Every supervisor said so, even those who set her up for termination. When she was at work, she rocked. Over and over again, the USDA argues and has argued that while they feel sorry for the catastrophic home life where her husband locked her in the house for days at a time and beat her, where the police took her and her children into an undisclosed location because her husband had threatened to kill her and her children, and he was turned in by his sister so that that couldn't happen. The USDA will say we're very sorry that this happened to her, but she should come to work. Counsel, there's a lot of claims that were made in the district court and honestly, it takes some time to go through and try to figure out what's been exhausted or abandoned. Can you talk about what you think to be your strongest claim that we should focus on reversing? I'm not asking you to concede the other ones, but it would be helpful for me, as I continue to think about this case, to try to focus on the one that you think is strongest. We believe that the failure to accommodate her disability is number one. The wrongful affiliation claim isn't as strong, and so that's the issues that we believe are the strongest in this case. So you say the failure to accommodate, that's your discrimination claim. Is that correct? That's the discrimination claim, and we do have the... What's the basis? What's the protected class that you think is... Disability and sex. Okay. And sex? Yes. And the reason that it is a disability and sex claim is because of the things that the agency said. When Parr, who was her supervisor, he set her up for termination. He manipulated the AWOL. Forty-five days of AWOL, they say, but he counted her AWOL for one minute late. He didn't allow her the glide time that every other employee was allowed. He didn't believe that she was disabled. That disbelief in the exclamations and exhortations that she is not actually disabled is, in and of itself, proof of an ADA violation as well as the Rehabilitation Act violation, because she was disabled. She did have doctor's notes. She had gone through the FMLA process. She was given two reasonable accommodations, which he never followed. And so because of that, she was written up and eventually terminated for the AWOLs that she didn't actually have. She had over 480 hours of accrued leave at the time she was terminated. Every one of those hours could have covered each of the AWOLs that she was supposedly given. The USDA has a policy that is directed toward victims of domestic violence. That policy is based upon the disability that is caused by the domestic violence situations. The USDA requires their supervisors to provide reasonable accommodations that include changing the hours of performance, that include allowing glide time, that include allowing flexibility. They call it their maxi-flex policy, which allows two hours of difference each day. So if she can't come in because she's in the hospital, she can come in two hours later. She can make up those two hours at a later point in time. They're required to provide telework for those that are engaged or have domestic violence issues. And the domestic violence policy is all directed toward the disability that arises out of the trauma caused by the domestic violence abuse. So in this situation, when PAR would write her up for AWOL, when he would manipulate the time and attendance, when he counted her AWOL, when she was actually there, when he would require her to get wet ink signatures from her healthcare providers, requiring them to change their own policies with regard to how they provide medical records, making him provide medical records or making the doctors provide medical records directly to him as opposed to the FMLA coordinator or the reasonable accommodations coordinator. All of those were harassment based upon her disability. Further, because of the things that he said about her, we can see that there was animus based upon both disability and upon her being female. When he called her little girl, you need to come to work, that was based on both her sex and upon her disability. When he told her things like, I don't believe you're disabled, I don't believe that you have these problems, or everybody has problems, you've got to leave them at home and come to work. All of those were based upon his disability. The disability, now that was fully exhausted in the court below. The defendants have argued that there was no exhaustion of the reasonable accommodation because they say that the only thing she put in her charge was disability based on discrimination on disability and  What she did then is she took the informal complaint and the informal communications that she'd had with the EEO counselor during the informal counseling process and attached it to her complaint and incorporated it within the complaint. Her complaint at the time talked about reasonable accommodation because she took the information that she had before from the informal counseling, attached it to the complaint, and incorporated it therein. Even if she doesn't say in the complaint, her EEO formal complaint, I was disabled and they didn't provide me with a reasonable accommodation, she did attach the informal counseling and she did incorporate it by reference and since an employee How did she incorporate it by reference? What did she say in that incorporation? Well, she said attached is. Right, but what is the attached is? The attached is was the informal counseling from the EEO counselor. She prepared a report and in that report she talked about the failure to provide a reasonable accommodation. And then did the, was that then addressed in the resolution at the agency? It was. The failure to accommodate? It was. The questioning throughout the ROI deals with the reasonable accommodation and the failure to provide a reasonable accommodation as well as the other forms of disability discrimination that she alleged. So that was fully exhausted. The other issue on exhaustion deals with the wrongful discharge claim. And the wrongful discharge claim is a little different than some because she, on May 2nd of 2022, she was hospitalized for a period of time. At that point in time she had a reasonable accommodation and she was working with the reasonable accommodation coordinator to cover that hospital stay. She was in the hospital for a period of time and then she had to go to an intensive outpatient unit. And she was again working with the reasonable accommodation coordinator to get all of those covered in some manner, either through leave without pay, through the leave that she'd received a notice of intent to terminate. That was then pulled back. She was given a notice of suspension and then she was given another notice to terminate. After the second notice to terminate, then she was no longer being paid. So at that point in time, that's when she believed she had been terminated because she wasn't being paid and she'd received the notice of termination. Now the Moses case tells us that if you have to file your EEO complaint at the time that you've been told that you're going to be terminated, for her the time that she was told she was going to be terminated was in August of 2022. And even though that termination didn't follow the policies and the regulations of the EEOC, I mean of the USDA, it still counts as the time that she was told to be terminated because thereafter, her pay quit. And so for all intents and purposes, she was terminated right then and she filed her EEO complaint. Now subsequently, months later, in approximately January of 2023, she received notification that the notice to terminate had been upheld. In this particular instance, that's just a pro forma because she was already off work, she wasn't working, she wasn't calling in, she wasn't being paid, and she'd been told she would be terminated. So the wrongful termination then is fully exhausted. Well, and that's your wrongful discharge on count four. Yes. And that was alleged in the complaint in the district court based on race and retaliation. You know, that was a typographical error. When you read the entirety of the complaint, the entirety of the complaint, if we start off with background facts applicable to all counts, and in the background facts applicable to all counts, we talk extensively and solely about discrimination- Did you make that argument to the district court? Did the district court accept that typographical error explanation? You know, it wasn't even raised until we got her order. And at the point in time we got her order, you know, that's what we appealed from. And so that wasn't really something that was even on the radar screen. If I'd recognized that we had a typographical error, of course we'd have asked to amend the complaint, because really it's just one word, two words in the entire complaint. Also you say wrongful discharge based on retaliation, and then there's a separate retaliation claim, correct? Correct. And I think that the argument is that maybe you abandoned the retaliation claim. Do you agree? Well, we abandoned the FMLA retaliation claim, because subsequent case law has established that there's no FMLA, that federal employees can't access FMLA relief. And so we abandoned the FMLA retaliation claim. We did not intend to abandon the retaliation claim itself, because we'd argued that in the part of the brief where we talked about harassment, because the harassment and the retaliatory harassment were some of the same events. So are you pursuing retaliation in your wrongful discharge, or just through the hostile work environment? We're pursuing retaliation through the hostile work environment, and it's an element of the wrongful discharge, but the wrongful discharge is really based upon the failure to accommodate and the harassment. And not retaliation. So you've abandoned retaliation as to the wrongful discharge claim. We haven't abandoned it, but like I said to begin with, I don't think the retaliation claim is the strongest. And you conceded you didn't argue it in that context on appeal. Well, I intended to. And we intended to when we were talking about, because the issue on retaliation was whether or not she had engaged in protected activity. And so we did deal with the protected activity piece in the briefing. And so we didn't intend to abandon, but I do believe that it's not our strongest count. And if you don't have any questions, then I would like to reserve the remainder of my time for rebuttal. May it please the Court. Good morning, Your Honors. My name is Vanessa Camberis from the U.S. Attorney's Office, and I have the honor and privilege to represent Brooke Rollins, the Secretary of the Department of Agriculture in this case. On behalf of the Secretary, I'm here today to ask you to affirm the judgment of the District Court, because the Court's order is error-free. Before I address any of the arguments made by counsel, I want to take a step back and talk about the claims that are in this case and what's actively present before this Court by placing them into three categories. The claims that were not exhausted, the claims that were abandoned based on their treatment at summary judgment, and then most importantly, the two claims that are properly before this Court because they were exhausted and argued at summary judgment. So the claims that were not exhausted is the failure to accommodate claim. The Eighth Circuit has said this is a separate form of disability discrimination. Similarly, the wrongful discharge claim, wrongful termination claim based on race. Race was not a basis in the underlying complaint. The fact that it was a typographical error has never been mentioned before this argument today, so I believe that claim is still not exhausted. And arguably, the wrongful discharge claim based on retaliation, and I'll get more into that. But is reprisal the same as retaliation? Because there is a reprisal in the agency's section. Correct. And I think we concede in our brief under the Ringhofer case that arguably this might be a related claim, but if we're going to look at, you know, wrongful termination based on race, that wasn't exhausted. Based on retaliation, I'm not exactly sure what the prior protected activity is, because if you look at the EEO case, it says, prior protected activity, parentheses, current, this current EEO activity. So she needs something to kind of rely on beforehand as the prior protected activity. It can't be the instant claim that we have here. So I think the wrongful termination claim still fails, even conceding that maybe it is related under Ringhofer. Turning to that second category of claims that were abandoned based on their treatment at summary judgment, that's disparate treatment based on gender, disparate treatment based on prior protected activity, hostile work environment based on gender, and hostile work environment based on prior protected activity. These claims were not argued in response to summary judgment, and the court found them to be abandoned. Similarly, the retaliation claims standing alone and the FMLA interference claim, there was a footnote in the response of summary judgment briefing in the concluding sentence of Ms. Randall's brief, which said these claims, we agree that they're gone. Even before this court now, there's one short paragraph on the retaliation claim. There's no substantive argument made as to how any of the conduct in this case is in fact retaliatory. Turning to the last category of claims, the two most important because they were properly exhausted and properly briefed, is disparate treatment based on disability and hostile work environment based on disability. What was the first one? Disparate treatment based on disability, disability discrimination. Clearly there are a lot of sympathies invoked by this case, but we're here today to talk about Title VII, and Title VII has five limited categories in which an employee is protected from discrimination. Unfortunately, once marital status or status as a survivor of domestic abuse do not fall within Title VII's purview. Additionally, the adverse actions that were challenged by Ms. Dobbins can all be justified by the fact that an employer has the right to appropriately staff their workplace, to know when their employees are going to be present for work, and to require communication of when those employees will be present. That's exactly what the USDA did in this case. Ms. Dobbins was absent from work in whole or in part on 45 different occasions within the first four months of 2022. There's extensive documentation in the record, I believe it's 16-8 from the district court's case explaining all of those absences. This court has said excessive absenteeism is a legitimate non-discriminatory reason for taking an adverse employment action. With that background, the district court correctly granted summary judgment on the seven claims presented by Ms. Dobbins in her complaint, and there are two key points that I would like to address today. First being that the district court correctly granted summary judgment on the claims that it substantially engaged in disparate treatment based on disability, and hostile work environment based on disability. Specifically finding there was no evidence to support discriminatory animus required for those claims. Second, as to the remaining claims, the court correctly ruled that the claims were either abandoned because they were not addressed in summary judgment or not properly exhausted in the underlying administrative proceeding. In considering the disparate treatment claim relating to disability, the district court correctly stated that while Ms. Dobbins' disabilities may stem from domestic violence, discussions about problems at home should not be confused with discriminatory animus. The district court thus found that Ms. Dobbins could not maintain a prima facie claim, nor could she establish pretexts required to withstand summary judgment. Relating to her hostile work environment claim, the district court correctly found there was no showing of discriminatory animus, nor that the conduct was sufficiently severe or pervasive. Instead, the hostile work environment actions stem from work attendance problems. Given the fact that Ms. Dobbins was consistently and repeatedly absent from work, it also makes it difficult to comprehend how she could demonstrate sufficient examples of workplace harassment. If there are no questions on those two claims, I'll turn to the claims that were either not properly exhausted or abandoned at summary judgment. The law is clear, when a brief does not support an assertion with any argument or legal authority, the issue has been waived, and a party cannot assert arguments that were not presented to the district court in opposite to summary judgment in an appeal contesting an adverse grant of summary judgment. Therefore, the court correctly found the retaliation claim, whether standing alone or related to the wrongful termination claim, was abandoned. Why would it be abandoned as related to the wrongful discharge? Is it because it wasn't addressed? Is that what the district court said? I believe that's correct. Even if it wasn't abandoned, and we go to the merits of the claim, there was no prior protected activity to trigger the retaliation claim. If we want to say that her prior EEO visit was sufficient to meet that prior protected activity, there was a seven-month gap between the wrongful termination and that visit, such that she would only be relying on temporal proximity. Similarly to the claims that were not exhausted, I think we've talked extensively on the wrongful discharge claim, but as to the failure to accommodate claim, this is a separate and distinct claim from disability discrimination. There was a reasonable accommodation in place in 2019 under Supervisor No. 1. Supervisor No. 2 modifies her accommodation in 2020 during the COVID pandemic and says this accommodation could be changed at any time. There's no argument as to whether she's seeking this accommodation if she followed the procedures outlined in this accommodation, and I don't believe there's any substantive discussion in the underlying administrative case about any additional accommodation that she sought. Did the agency address this? She says she attached it to her submission to the EEO. I'm not aware if there was an attachment, but I don't think there were any questions in the affidavits about this. There's no substantive discussion about what accommodation she's seeking or if it's relating to the 2021 accommodation that could be modified at any time. Under that accommodation, she was supposed to submit a week-by-week proposal of what was needed. I guess my question is, do you think that the agency addressed it? I do not think it was addressed. So you disagree? Correct, I disagree. Again, as it relates to the week-by-week accommodation after COVID, there's no evidence that she even followed the procedures for that accommodation that were in place. If there are no further questions, I would ask that the court affirm the judgment entered by the district court. Thank you. Thank you, Your Honor. I'd like to start at the very end where you ask whether or not there was a, whether reasonable accommodation was addressed in the ROI, and it actually was. There were numerous questions that were addressed regarding when was she given a reasonable accommodation, what was the reasonable accommodation, and what was the outcome of that reasonable accommodation. So throughout the ROI, which is the report of investigation, and the affidavits that were taken, there were questions that were directly addressed concerning the reasonable accommodation, and so that was fully exhausted. With regard to the protected activity, again, I told you at the beginning that we thought that our retaliation and reprisal claim was the weakest, and the reason for that is this. She didn't have any specific EEO complaints that she made prior to this one. However, on two occasions, first she addressed the harassment she was enduring to her supervisor directly. After he received that comment from her about her harassing her, in a staff meeting, he told her in front of everybody that he knows what the rules are regarding the EEOC, and she better watch it, or she's going to be liable for slander, which is, he said, verbal, or defamation, which is written. And so she didn't then pursue her claim because he made the threat in front of everybody else. Then the second time, she actually requested the forms from the EEO counselor. She talked to Ms. Liberty, who was her co-worker, and thought she could trust her. Ms. Liberty then communicated with her boss, Mr. Parr, and again, in front of everyone in a meeting, he told her, little girl, you better be careful what you do because you don't know what's coming at you. And so he threatened her again. And so that's the basis besides this EEO complaint that she actually filed. Those are the bases of the retaliatory, the opposition that she made that caused the retaliation. Now, the retaliation was a continuation of the things that she'd already been suffering. It just ramped up. And that was that he continued to require her to get FMLA documentation that wasn't required, to have the doctor send stuff to her, to talk to people outside of his office about her disabilities, about the fact that he didn't believe her disabilities, about the fact that she was depressed, had PTSD. Now, defense would also tell you that being a domestic violence victim is not, per se, a disability, and that's true. But the post-traumatic stress disorder that she was diagnosed with is a disability. It's a recognized disability, and she should have been treated the very same way as every other individual who's disabled and has post-traumatic stress disorder, and she was not. They refused to follow their own and that was pretext. Thank you, counsel. Thank you to both counsel for your arguments here today. They've been helpful. Thank you also for the briefing, and we will take the matter under advisement. That concludes our argument calendar for the morning, and court is adjourned until nine o'clock tomorrow morning.